# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

PAREN HASMUKHBHAI PATEL,  No. CIV S-09-2923-MCE-CMK-P

    Petitioner,

  vs.  FINDINGS AND RECOMMENDATIONS

G. SWARTHOUT,

    Respondent.

_____/

    Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are petitioner's amended petition for a writ of habeas corpus (Doc. 10), respondent's answer (Doc. 21), and petitioner's reply (Doc. 25).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

# I. BACKGROUND

**A.  Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> Defendant and the victim began living together in the victim's apartment in September 2007. In early December 2007, the victim moved out of her apartment and began "jump[ing] back and forth" between two motels. Defendant stayed with her in both motels.
> On January 1, 2008, defendant and the victim got into an argument in the victim's motel room. After the victim refused defendant's request to watch his friend's son while he went out, defendant "just flipped," "grabb[ing]" her, "slapping [her] in the head," "hitting [her]," and "kicking [her]" after she fell to the ground. During the fight, he "pulled the phone out of the wall."
> In March 2008, defendant was charged with domestic violence and cutting a utility line. The complaint also alleged two prior convictions (which defendant later admitted).
> At the outset of the trial in August 2008, the prosecutor moved to admit evidence of defendant's prior conviction for robbery for purposes of impeachment if defendant testified. The court granted that motion. The prosecutor then moved to exclude any reference to the victim's parole status and the fact that she was in custody. Defense counsel opposed that motion, arguing that the victim's prior conviction for domestic violence was "going to be at issue" because the victim was going to testify as a witness. Defense counsel also argued that the fact the victim was on parole for that offense and was in custody on a parole violation was "just as relevant . . . as the original offense itself" because "[i]t shows that she continues to violate the law, and . . . we don't want [her] to have" a "[f]alse aura of lawfulness." The prosecutor conceded the victim's prior conviction would be admissible for impeachment purposes, but argued her parole status did not "go to credibility, and it's prejudicial to the people." The trial court agreed evidence of the victim's parole and custodial status was inadmissible "propensity evidence" and granted the motion over defense counsel's objection, subject to an application to revisit the issue outside of the jury's presence.
> The prosecutor then requested that the court instruct the jury that the victim's prior conviction could be "used only for the purpose of evaluating her truthfulness, her credibility as a witness, and not as evidence of propensity," since it appeared defendant would not be testifying and therefore would not be claiming self-defense. The court

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

1  agreed to instruct the jury accordingly when the evidence of the victim's prior conviction was elicited and at the conclusion of the case. Defense counsel did not object and did not argue that the victim's prior conviction should be admitted for a purpose other than impeachment.

The prosecutor moved, pursuant to Evidence Code section 1109, to admit evidence of defendant's prior acts of domestic violence against the victim – specifically, the victim's testimony that defendant had assaulted her about 15 times in the month before the charged incident. Defense counsel offered no opposition, and the court granted the motion.

During the victim's testimony, the prosecutor elicited evidence that defendant had assaulted her about 15 times during their relationship, beginning near the end of December 2007. She then testified about the fight on January 1, 2008. In the course of examining the victim, the prosecutor elicited testimony that she was an alcoholic and had used methamphetamine off and on during her relationship with defendant, but she had not had a drink in about seven months and was not using methamphetamine "today."

In the midst of the victim's testimony, defense counsel asked to address some matters outside the presence of the jury. Counsel argued that because the prosecutor had elicited testimony that the victim had "been clean and sober basically for seven months," he was "entitled to explore the reasons and inspiration behind that, meaning her incarceration, the fact that she really doesn't have a choice." The prosecutor argued there was "absolutely no probative value to the reasons why she's been sober. The reason it's significant that she's sober is it goes to her ability to recollect the evidence today, and to testify today about what occurred seven months ago. That's why it's relevant. The fact that she's sober is relevant. The reason that she's sober, whether it was because she just made a decision to stop using or whether because she was incarcerated and had no choice, is completely immaterial and it's terribly prejudicial." Defense counsel argued they were "misrepresenting the character of the witness and . . . the nature of th[e] witness' past few months of her life." The court concluded the probative value of the reason for the victim's sobriety was outweighed "by the substantial prejudice that would result by the jury hearing that . . . she's been sober . . . because of incarceration." Accordingly, the court ruled that defense counsel could not "go into [the victim's] custodial status."

Subsequently , the prosecutor elicited the victim's admission that she had a prior conviction for domestic violence from 2000. On cross-examination, defense counsel elicited further testimony from the victim regarding her prior conviction.

The defense rested without presenting any evidence. The jury found defendant guilty of domestic violence but deadlocked on the charge of cutting a utility line, and the court declared a mistrial on that charge. The court subsequently sentenced defendant to an aggregate term of 10 years in prison .

/ / /

/ / /

### B. Procedural History

Petitioner's conviction and sentence were affirmed on direct appeal in a reasoned decision issued by the California Court of Appeal. The California Supreme Court denied review without comment or citation.

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

///
///
///
///

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

/ / /

/ / /

/ / /

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found

even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III.  DISCUSSION

Petitioner raises two claims: (1) the trial court erred in precluding the defense from exploring the victim's custody status; and (2) the trial court erred in limiting the evidence of the victim's prior conviction to the issue of credibility only.  Addressing both claims, the state court held:

> We conclude neither of defendant's arguments is properly before us.  First, because his trial attorney never sought to use the victim's domestic violence conviction to show her propensity for violence, any claim of error in the trial court's limitation on the use of that conviction was forfeited.  Second, because defendant did not argue in the trial court that he has a federal constitutional right to offer evidence of the victim's incarceration, he forfeited that argument as well.  Accordingly, we will affirm the judgment.

Respondent argues that the state court imposed procedural defaults which bar federal review.

Based on concerns of comity and federalism, federal courts will not review a habeas petitioner's claims if the state court decision denying relief relies on a state law ground that is independent of federal law and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255, 260-62 (1989). However, a discretionary state rule is not adequate to bar federal habeas corpus review. See Siripongs v. Calderon, 35 F.3d 1308 (9th Cir. 1994). Generally, the only state law grounds meeting these requirements are state procedural rules. Even if there is an independent and adequate state ground for the decision, the federal court may still consider the claim if the petitioner can demonstrate: (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice. See Harris, 489 U.S. at 262 (citing Murray v. Carrier, 477 U.S. 478, 485, 495 (1986)).

A state law is independent if it is not interwoven with federal law. See Michigan v. Long, 463 U.S. 1032, 1040-41 (1983). The independence of a state law is measured at the time the default is imposed by the state court to bar a claim. See Bennett v. Mueller, 322 F.3d 573, 582 (9th Cir. 2003); see also La Crosse v. Kernan, 244 F.3d 702, 204 (9th Cir. 2001); Park v. California, 202 F.3d 1146 (9th Cir. 2000) (assessing whether California's waiver default was independent when the California Supreme Court denied the claim). A state law is adequate if it is clear, well-established, and consistently applied. See Bargas v. Burns, 179 F.3d 1207, 1211 (9th Cir. 1999). The adequacy of a state default is measured at the time of the petitioner's purported default. See Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997). Thus, the respective dates for determining the adequacy and independence may not be the same.

The government bears the ultimate burden of establishing adequacy. See Bennett, 322 F.3d at 581. However, because the petitioner bears the initial burden of putting a procedural bar affirmative defense in issue in the case (by asserting specific factual allegations as to inadequacy, for example), the scope of the state's burden of proof is measured by the specific assertions put forth by petitioner. See id. at 586. The petitioner's burden is de minimus. See

King v. Lamarque, 464 F.3d 963, 967 (9th Cir. 2006); see also See Webb v. Kernan, 2008 WL 564965 (E.D. Cal. 2008).

When the state court discusses a procedural default but also reaches the merits of a claim, a denial of the claim cannot be said to have relied on the procedural default. See Thomas v. Hubbard, 273 F.3d 1164, 1176 (9th Cir. 2001) (citing Harris, 489 U.S. at 263); see also Panther v. Hames, 991 F.2d 576, 580 (9th Cir. 1993). As the Ninth Circuit observed in Panther, ". . . because the Alaska Court of Appeals considered Panther's claim on the merits . . . so can we." 991 F.2d at 580. In Thomas, the state court discussed the issue of procedural default but then went on to deny the claim because any error was harmless. See 273 F.3d at 1176. The Ninth Circuit held: "In doing so, the [state] court left the resolution of the procedural default issue uncertain rather than making a clear and express statement that its decision was based on a procedural default." Id. Therefore, where the state court discusses both procedural default and the merits, and does not expressly hold that the procedural default is the basis of the denial, the procedural default does not operate to bar federal review.

Here, the state court imposed the so-called contemporaneous objection default. Under California law, ". . . an appellate court will not consider claims of error that could have been – but were not – raised in the trial court." People v. Vera, 15 Cal.4th 269, 275-76 (1997). In Rich v. Calderon, 187 F.3d 1064, 1066 (9th Cir. 1999), and Vansickel v. White, 166 F.3d 953 (9th Cir. 1997), the Ninth Circuit held that California's contemporaneous objection rule is an adequate and independent state procedural rule when properly invoked by the state courts. The Ninth Circuit has also concluded that the contemporaneous objection rule has been consistently applied by the California courts. See Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002).

Because the state court imposed a default which is both independent and adequate, and because the state court did not nonetheless address the merits, this court is barred from reviewing petitioner's claims. Petitioner has not demonstrated cause and prejudice excusing application of the procedural bar in this case.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's amended petition for a writ of habeas corpus (Doc. 10) be denied and that all pending motions be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED: December 1, 2010

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE